UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITI CONNECT, LLC

                           Plaintiff,

     -against-

LOCAL UNION NO. 3, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS,
AFL-CIO,

                           Defendant.

No. 20 Civ. 5147 (CM)

---

**ORDER DENYING PLAINTIFF'S MOTION FOR A STAY OF ARBITRATION**

McMahon, C.J.:

Plaintiff Citi Connect, LLC ("CitiConnect") seeks, *inter alia*, a declaration permanently enjoining Defendant Local Union No. 3, International Brotherhood of Electrical Workers, AFL-CIO ("Local 3") from arbitrating its grievance based on CitiConnect's alleged breach of the Social Security provision of the Collective Bargaining Agreement (the "CBA") between the parties.

The motion – treated as what it is, which is a motion for an order staying arbitration – is DENIED.

**BACKGROUND**

CitiConnect is a cable contractor. (Affidavit of Richard Carr ("Carr Aff."), Dkt. No. 3-2 ¶ 7.) CitiConnect and Local 3 were parties to an industry-wide collective bargaining agreement that Local 3 entered into with each of its cable contractors. ("CBA," Ex. A to Carr Aff., Dkt. No. 3-3; Carr Aff. ¶ 7) Pursuant to the CBA, CitiConnect employed members of Local 3 to install, service, and maintain various cable, television, and security systems. (CBA at 2.)

The CBA's Grievance and Arbitration provision states as follows:

> All complaints or disputes involving the interpretation or application of this Agreement, or disciplinary penalty (including discharge) must be filed by the grievant within fifteen (15) working days from the occurrence or knowledge of the occurrence. . . . If said grievance cannot be settled directly by the parties it may, upon application by either party, be submitted to the American Arbitration Association for binding arbitration in accordance with its Expedited Arbitration Procedure. The decision of the Arbitrator shall be final and binding upon the parties and his fees shall be equally borne by the parties.

(*Id.* at 11.)

The term of the CBA ran from August 28, 2014 to May 5, 2016, and was subject to a so-called "Evergreen" clause, which provides that the CBA "continue[s] . . . year to year thereafter unless terminated in the manner provided herein." (*Id.* at 1.) Either party could terminate the CBA "by written notice to the other, given not more than ninety (90) days and not less than sixty (60) days prior to such date of termination." (*Id.* at 12.)

In his affidavit, CitiConnect President Richard Carr asserts that, "Local 3 terminated the [] CBA on or about ninety days prior to May 5, 2016." (Carr Aff. ¶ 8.) He states that the parties have been actively negotiating over a new agreement since April 21, 2016. (*Id.* ¶ 14.) No copy of any written notice purporting to terminate the CBA is attached to this motion and it seems that neither party can locate a copy of the written termination notice. (Pl.'s Reply at 1 n.2, Dkt. No. 12; *see generally* Carr Aff.) Of course, that does not mean that Local 3 did not terminate the CBA in writing and during the prescribed time period – but it certainly does make it harder to prove that the CBA was terminated in accordance with its terms.

*The Grievance and Notice of Intent to Arbitrate*

One provision of the CBA requires CitiConnect "to pay the full amount of employees [*sic*] Social Security payments for all employees on the payroll as of August 28, 2014 after four (4) years of employment." (CBA at 11.) Put otherwise, CitiConnect at some point would become responsible for paying both the employer and the employee share of the amount owed to Social

Security by/for every employee who was on the payroll as of August 28, 2014 and continued to work for CitiConnect for four years thereafter.

On June 1, 2020, Local 3 filed a grievance under the CBA, alleging that CitiConnect had breached this obligation by failing to pay the full amount of Social Security payments on behalf of eligible employees, as required under the CBA. (Carr Aff. ¶¶ 17, 19.) CitiConnect rejected the grievance. It argued that this obligation did not vest until August 28, 2018 – four years after August 28, 2014 – and that, by August 28, 2018, Local 3 had terminated the CBA. Moreover, Local 3's grievance was not filed within fifteen days of August 28, 2018, and was therefore untimely. (*Id.* ¶¶ 20-24.)

On June 3, Local 3 sent CitiConnect a Notice of Intent to Arbitrate the Social Security payments, which were "required under the CBA and established past practice." ("Notice," Ex. D to Carr Aff., Dkt. No. 3-6.) Thirty-three days later, on July 6, 2020, CitiConnect filed the instant action, seeking a declaration that it has no obligation to arbitrate and an injunction prohibiting arbitration. CitiConnect argues that there is no valid agreement compelling it to arbitrate the dispute, since (1) the CBA was terminated four years earlier, in 2016; and (2) the agreement to arbitrate Local 3's grievance did not survive the termination of the CBA, because the right Local 3 seeks to vindicate did not vest until August 2018. CitiConnect's complaint also urges that it is not in breach of the Social Security provision of the CBA and asserts claims in fraudulent inducement and breach of the duty of good faith and fair dealing.

Concurrently with its complaint, CitiConnect filed an emergency motion for a temporary restraining order ("TRO") enjoining Local 3 from proceeding with the arbitration of its grievance pending a declaration that Local 3 is permanently enjoined from arbitrating its grievance. (Dkt. No. 3.)

Local 3 counters that the CBA has continued on a year-to-year basis since May 6, 2016, pursuant to the evergreen provision, so the arbitration agreement remains in force. (Carr Aff. ¶ 27.)

On July 7, this Court conferenced the case and granted the TRO pending briefing on the motion for a preliminary injunction. The parties then set their own briefing schedule (extending well beyond the 14-day life of a temporary restraining order) and agreed to abide by the stay of arbitration until the motion could be decided.

## DISCUSSION

The Court asked the parties to brief the following questions: (1) Was the agreement terminated, or has it continued on a year-to-year basis? (2) If it was terminated, did the arbitration agreement in the CBA survive the expiration of the contract under *Litton Financial Printing Division, a Division of Litton Business Systems, Inc. v. N.L.R.B.*, 501 U.S. 190 (1991)?; (3) Was arbitration timely sought? and (4) Must these questions be answered by an arbitrator?

I conclude that both the timeliness of Local 3's demand for arbitration and whether the CBA was terminated are questions that only an arbitrator can answer. Accordingly, CitiConnect is not entitled to a stay of arbitration, and its motion is denied.

## I.      Legal Standard

CitiConnect did not commence this proceeding by filing a petition to stay arbitration (as it should have), but instead filed a complaint seeking a declaration that it is not obligated to arbitrate. It now moves for an injunction prohibiting the arbitration from going forward. The Court suspects that this unorthodox procedure was followed because CitiConnect did not commence this action within twenty days of the filing of the Notice of Intent to Arbitrate, as required by New York C.P.L.R. 7503 – and indeed, Local 3 urges that one reason to deny the motion is that it is made too late (*see infra* Section II).

There is no question that this application should be treated as what it is: a petition to stay arbitration. As a result, the standard to be applied is not the familiar "likelihood of success on the merits coupled with irreparable injury" standard applicable to matters properly brought under Fed. R. Civ. P. 65, but rather, the standard for granting a motion for summary judgment. "Courts apply the summary judgment standard to motions to stay arbitration." *New York Dialysis Servs., Inc. v. New York State Nurses Ass'n*, 262 F. Supp. 3d 96, 98 (S.D.N.Y. 2017) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). This means that a court will grant a motion to stay arbitration only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

However, I note that the result would be the same if this were decided as a motion for an injunction, because – for the same reasons that it is not entitled to a stay – CitiConnect does not demonstrate a likelihood of success on the merits.

## II.    CitiConnect's Suit is Arguably Timely.

Local 3 argues that CitiConnect's application to stay should be denied because it was made too late, as per N.Y. C.P.L.R. § 7503(c), which provides the relevant statute of limitations.

CitiConnect commenced this action pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), which grants this court jurisdiction over suits for violations of contracts between an employer and a labor organization. 29 U.S.C. § 185. (Compl. ¶ 4.) "Because Congress did not provide a statute of limitations for suits brought under § 301," courts in the Second Circuit "determine[] the statute of limitations for the federal cause of action by looking to the most appropriate state statute of limitations." *Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (citing *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990)). When federal

5

courts look to state law for statutes of limitation, they "borrow no more than necessary." *Local 802*, 145 F.3d at 88 (quoting *West v. Conrail*, 481 U.S. 35, 39 (1987)). Courts in this district apply the limitations of C.P.L.R § 7503(c) to petitions to stay arbitration brought under the LRMA. *See, e.g.*, *Rite Aid of New York, Inc. v. 1199 SEIU United HealthCare Workers E.*, 334 F. Supp. 3d 568, 572–74 (S.D.N.Y. 2017) (collecting cases).

Under § 7503(c), a party that receives a demand for arbitration has twenty days to apply to stay the arbitration. N.Y. C.P.L.R. 7503. Therefore, in the ordinary course, I would dismiss the petition as untimely.

CitiConnect argues that its filing was timely because the statute of limitations in C.P.L.R. 7503 was tolled during the height of the COVID-19 pandemic. The courts of the State of New York for many weeks had been closed, and no new filings of any sort were being accepted. In recognition of this fact, by a series of Executive Orders, the Governor of the State of New York had expressly tolled "any specific time limit for the commencement, filing, or service of any legal action . . . as prescribed by the procedural laws of the state, including but not limited to . . . the civil practice law and rules." These tolling orders were in effect from March 20, 2020 through July 6, 2020. *See* Executive Orders 202.8, 202.14, 202.28, 202.38, "Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency," *available at* https://www.governor.ny.gov/executiveorders. The instant complaint was filed as soon as the then-current Executive Order expired on July 6, 2020.

I concede that, had CitiConnect filed an action in the New York State Supreme Court pursuant to C.P.L.R 7503 on the date on which it filed the instant lawsuit (July 6, 2020), its application for a stay pending arbitration would not have been time barred, due to Governor Cuomo's Executive Order. But CitiConnect chose to file a lawsuit in this Court. And unlike the

courts of the State of New York, this Court was not closed to new filings at any time during the pandemic, and no one with authority over the operations this court has ever tolled the running of any statute of limitations.

The question is whether Governor Cuomo's toll of the statute applied to actions filed in this court.

Local 3 urges the Court to ignore the Executive Orders, because federal courts need not borrow "the gloss placed on the limitations statute by New York courts," *Local 802*, 145 F.3d at 89, or a New York court's interpretation of state statutes of limitations that contravene the federal policy goals that underlie the LMRA, *see New York City Dist. Council of Carpenters Pension Fund v. Dafna Constr. Co.*, 438 F. Supp. 2d 238, 241 (S.D.N.Y. 2006). CitiConnect responds these cases reject *judicial* interpretations, not *executive* orders.

I intend to address the merits of CitiConnect's application. The LMRA's policy of promoting speedy resolution of labor disputes is not frustrated by honoring these temporary executive orders. Moreover, neither party identifies any law on whether the Executive Order's tolling on the ground that state courts were closed applies here, where courts were open. The one case this Court found that touches on the issue is *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 307 (S.D.N.Y. 2014). In *Weslowski*, the plaintiff noted that Governor Cuomo had suspended certain state statutes of limitation in response to Hurricane Sandy. *See id.* The plaintiff urged the court to "apply the borrowed (and thus, arguably, tolled) state statute of limitations to his FCA claim." *Id.* The court disagreed because Congress had enacted a federal statute of limitations for FCA claims, such that no borrowing was necessary. *Id.* In this case, by contrast, I must borrow the "arguably, tolled" state statute of limitations.

A reasonable practitioner may have been confused about the impact of the Governor's toll on cases that could be filed in either state or federal court (as this one could have been). Moreover, since CitiConnect loses on the merits, there is no harm to Local 3 by applying the toll. Should the Court of Appeals disagree with my borrowing of the Executive Order's toll, it can always dismiss the complaint on the ground that it was untimely brought.

III.    **The Timeliness of Local 3's Arbitration Demand Presents a Question for the Arbitrator.**

Having dealt with the timeliness of this lawsuit, I turn to a different question: was arbitration timely noticed?

CitiConnect argues that Local 3's grievance and Notice of Intent to Arbitrate were filed too late, because the CBA provides that "All complaints or disputes . . . must be filed by the grievant within fifteen (15) working days from the occurrence or knowledge of the occurrence." (CBA at 11.) It argues that this arbitration was noticed many months, even years, after Local 3 became aware of CitiConnect's non-payment of the employees' share of their Social Security payments.

Unfortunately, this Court is not the proper forum for answering that question. Whether an original demand to arbitrate was time-barred under a specific provision in the parties' agreement is a question "within the exclusive province of the arbitrator." *Conticommodity Servs. Inc. v. Philipp & Lion*, 613 F.2d 1222, 1226 (2d Cir. 1980). This is an "issue[] of procedural arbitrability" that is "for the arbitrators to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (internal quotations and citation omitted). Therefore, this issue is for the arbitrator.

**IV.      Whether the CBA was Terminated Presents a Question for the Arbitrator.**

"The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (quotations and citations omitted).

Here, there is no question that the parties at one time were subject to an arbitration agreement. (*See* Carr Aff. ¶ 5.) But the parties disagree about whether that arbitration agreement remains valid and binding. The answer to that question depends on (1) whether the CBA was terminated; and (2) if it was, whether the arbitration agreement survived the termination of the CBA. And those questions are, in the circumstances of this case, for the arbitrator.

Whether questions of termination/expiration are for the court or the arbitrator depends on the agreement between the parties. *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 74 (2d Cir. 1997). "Where the agreement contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision or the 'evergreen' clause, disputes over these matters should be submitted to arbitration." *Id.* at 73 (citations omitted); *see also In re Reuters Am. LLC v. For a judgment staying the arbitration commenced by Newspaper Guild of New York, Local 3*, 694 F. Supp. 2d 242, 245 (S.D.N.Y.), *aff'd sub nom. Reuters Am., LLC v. Newspaper Guild of New York, Local 3*, 401 F. App'x 597 (2d Cir. 2010).

Here, the CBA's arbitration provision is sufficiently sweeping. It covers "All complaints or disputes involving the interpretation or application of this Agreement." (CBA at 11.) It does not expressly exclude from the broad ambit of arbitrability disputes over either the termination of the agreement or the continuation of the agreement pursuant to its "evergreen" clause. Therefore,

under *Abram Landau*, the parties' disputes over these issues must be submitted to arbitration. 123 F.3d at 73–74; *see also ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155–56 (2d Cir. 2003).

This Court is not persuaded by CitiConnect's arguments to the contrary.

CitiConnect argues that Local 3 does not deny terminating the CBA, as alleged under oath by Mr. Carr – specifically, that "Local 3 terminated the [] CBA on or about ninety days prior to May 5, 2016" (Carr Aff. ¶ 8) – and urges the Court to draw an adverse inference against Local 3 on this basis. CitiConnect further claims that evidence it has presented, including Local 3's bargaining with CitiConnect since April 21, 2016 (*see* Ex. B to Carr Aff., Dkt. No. 3-4), conclusively proves that the CBA was terminated.

These arguments do not address the fact that the parties agreed to a broad arbitration clause, covering every aspect of the interpretation of the CBA, and failed to identify any express exclusions from the ambit of arbitration. CitiConnect is free to make these arguments to the arbitrator, but this Court cannot and will not entertain them, because the resolution of this dispute requires the application and interpretation of the termination and evergreen provisions in the CBA – tasks expressly delegated to the arbitrator in the arbitration clause. *See Duane St. Assocs. v. Local 32B-32J*, No. 00-cv-3861, 2000 WL 802889, at *2 (S.D.N.Y. June 21, 2000) (citations omitted).

As an aside, I must observe that "the record does not disclose any written notice of cancellation," as required by the termination provision of the CBA. *Queens Boulevard 40th Owners Corp. v. Figueroa*, No. 13-cv-1433, 2015 WL 1938185, at *2 (S.D.N.Y. Apr. 22, 2015). CitiConnect's assertion that it is "no longer in possession of the letter terminating the Expired CBA from more than four (4) years ago" – made, not in a sworn statement, but in a footnote to its reply brief (Pl.'s Reply at 1 n.2, Dkt. No. 12) – places in doubt whether the agreement was terminated in accordance with its terms. Local 3 insists that it was not. (Def.'s Opp'n at 13, Dkt. No. 9.) That

issue is for the arbitrator to decide. *See Queens Boulevard*, 2015 WL 1938185, at \*2; *Duane St.*, 2000 WL 802889, at \*2.

In accordance with this Court's instructions, made only hours after this lawsuit was filed, both parties have made arguments under *Litton*, 501 U.S. 190, about whether the arbitration clause would survive the CBA's expiration. But at the moment, that remains a hypothetical – and so a non-justiciable – question. "Whether the Agreement has expired [is a] question[] that the Second Circuit requires we remit to the arbitrator, even after *Litton*." *Watson v. USA Today Sports Media Grp., LLC*, No. 17-cv-7098, 2018 WL 2316634, at \*5 (S.D.N.Y. May 8, 2018) (quotations, alterations, and citations omitted). Indeed, other courts in this district have compelled arbitration – or denied stays thereof – based on a dispute over expiration/termination, notwithstanding arguments about survivability. *See Pontier v. U.H.O. Mgmt. Corp.*, No. 10-cv-8828, 2011 WL 1346801, at \*2–3 (S.D.N.Y. Apr. 1, 2011); *In re Reuters Am.*, 694 F. Supp. 2d at 245–46; *Duane St.*, 2000 WL 802889, at \*2. Therefore, the parties have to arbitrate the threshold issues of both termination of the CBA and survivability of the arbitration clause in the event of termination. If the arbitrator concludes that the CBA was terminated and the arbitration clause did not survive termination, a court can adjudicate the underlying dispute. It cannot address those preliminary questions.

## V.      Whether Local 3's Underlying Claim is Arbitrable Presents a Question for the Arbitrator.

In the event that the arbitrator concludes that the parties are subject to a valid and binding arbitration agreement – whether because the CBA was not terminated in accordance with its terms or because the agreement survived termination – the parties disagree about the arbitrability of the underlying dispute, and even over who should decide that question, this Court or an arbitrator.

11

This issue need not detain us long. The arbitration clause, assuming it is valid and binding, requires Local 3 to submit its grievance to the American Arbitration Association ("AAA") for binding arbitration in accordance with its Expedited Arbitration Procedure. (CBA at 11.) The CBA's incorporation of the AAA's Expedited Procedure "clearly and unmistakably" incorporates the AAA Rule delegating issues of arbitrability to the arbitrator. *See Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). CitiConnect claims this reference is insufficient to send the issue of arbitrability to the arbitrator. It cites no authority for its argument, and understandably so. The incorporation of the AAA Expedited Procedure into the arbitration agreement sends the issue of the arbitrability of the underlying dispute to the arbitrator as well.

## CONCLUSION

If an arbitrator decides that the parties are subject to a valid and binding arbitration agreement (for whatever reason), and that the Social Security payments dispute is not arbitrable, this Court will decide that dispute. If the arbitrator decides that the parties are not subject to a valid and binding arbitration agreement, this Court will decide the Social Security payments dispute. But until an arbitrator decides all of those threshold questions, this Court has no business getting involved.[1]

---

[1] And if the arbitrator decides that there is a valid and binding arbitration agreement and that the underlying dispute should be arbitrated, this Court has no business getting involved until the time comes to confirm the arbitration award and enter judgment thereon.

CitiConnect's motion for a stay of arbitration (styled as a request for an injunction prohibiting arbitration) is DENIED. The action before this court is STAYED pending the outcome of the arbitration.

The clerk of court is hereby directed to close the open motion at Docket Number 3. This is a written opinion. It is the opinion and order of the Court.

Dated:   October 7, 2020
         New York, New York

_____
Chief Judge

BY ECF TO ALL PARTIES